UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL AYOTTE,                                    Case No. 15-13826

              Plaintiff,                 Arthur J. Tarnow
v.                                              United States District Judge

B. STEMEN, *et al*,                             Stephanie Dawkins Davis
                                                United States Magistrate Judge

              Defendants.
_____/

**REPORT AND RECOMMENDATION**
**MOTION FOR SUMMARY JUDGMENT (Dkt. 20)[1]**

## I.     PROCEDURAL HISTORY

Plaintiff filed the instant prisoner civil rights action on October 26, 2015.

(Dkt. 1).  On February 3, 2016, District Judge Arthur J. Tarnow referred this case

to the undersigned for all pretrial proceedings.  (Dkt. 29).  On December 22, 2015,

defendants filed a motion for summary judgment.  (Dkt. 20).  Plaintiff filed a

response on January 26, 2016, and an affidavit.  (Dkt. 24, 26).  In addition,

plaintiff filed a "Motion for Judicial Notice" which appears to be related to this

motion for summary judgment.  (Dkt. 25).  The Court has determined that

defendants need not file a response to the "Motion for Judicial Notice."  This

matter is now ready for report and recommendation.

---

[1] Plaintiff's "Motion to Take Judicial Notice" found at Dkt. 25 is related to defendants'
motion for summary judgment and will be terminated as part of this report and recommendation.

1

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED** in part and **DENIED** in part, without prejudice. The practical impact of the ruling would be the dismissal of all claims with the exception of plaintiff's claims against defendants Visconti and Bridges for alleged retaliation under the First Amendment pending potential further consideration after a full development of the record relating to exhaustion of that claim.

## II.    FACTUAL BACKGROUND

Plaintiff is a prisoner who is currently confined in the Michigan Department of Corrections ("MDOC") at the Macomb Correctional Facility (MRF), New Haven, Michigan. Plaintiff's complaint is filed under 42 U.S.C. § 1983 and claims infringement of his civil rights, alleging violations of the First, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

MRF Defendants are Deputy Warden Darrell Steward, Corrections Program Coordinator Maria Visconti, Hearings Investigator William Bridges, Lieutenant Peter Neuberger, Sergeant Dale Hughes and Corrections Officer (C/O) Brett Stemen. According to Ayotte, once he was elected to the Warden's Forum, he brought up issues concerning food service in September of 2014. (Dkt. 1, ¶ 12). By November 2014, he began receiving false work reports. (Dkt. 1, ¶ 16). On December 25, 2014, Ayotte was issued a Class II misconduct violation for

2

possession of stolen property after C/O Stemen discovered 20 hamburger patties in Ayotte's coat.  Sergeant Hughes reviewed the violation with Ayotte.  (Dkt. 1, ¶ 29).  Lieutenant Neuberger, acting as the Hearing Officer, found Ayotte guilty of the misconduct on January 6, 2015.  (Dkt. 1, ¶ 29).  Deputy Warden Steward denied Ayotte's appeal.  (Dkt. 1, ¶¶ 32-34).  And, on February 25, 2015, Warden Romanowski overturned the guilty finding. (Dkt. 1, ¶ 37).[2]

In Count I, Ayotte alleges that C/O Stemen conspired with others to falsify a misconduct violation.  (Dkt. 1, ¶ 112).  Next, he alleges that Deputy Warden Steward conspired with others to confiscate or destroy Ayotte's "records" and falsify other records in retaliation for filing grievances and being a member of the Warden's Forum.  (Dkt. 1, ¶113).  Ayotte further alleges that Corrections Program Coordinator Visconti and Hearings Investigator Bridges retaliated against him for having raised issues as a member of the Warden's Forum.  (Dkt. 1,  ¶¶ 114, 115).  Finally, Ayotte alleges that Lieutenant Neuberger conspired with others to falsify a misconduct violation and ultimately found him guilty of that violation.  (Dkt. 1, ¶¶ 117 -118).

In Count II, Ayotte incorporates his prior allegations and asserts that the defendants' conduct violated his rights under the Fifth and Sixth Amendments.

---

[2] The record is not clear that plaintiff's misconduct ticket was overturned.  Plaintiff says that it was, but Step II grievance response indicates that it was not overturned.  (Dkt. 20-3, Pg ID 214).

In Count III, Ayotte incorporates his prior allegations and asserts that defendants'
conduct violated his right to substantive due process. In Count IV, Ayotte
incorporates his prior allegations and asserts that defendants' conduct violated his
right to procedural due process. In Count V, Ayotte incorporates his prior
allegations and asserts that defendants acted with knowledge, encouragement
and/or collaboration with other defendants to violate his rights. In Count VI,
Ayotte incorporates his prior allegations and asserts that defendants denied him a
fair hearing in regards to his Class II misconduct violation, thereby violating his
rights under the First, Fifth and Sixth Amendments. In Counts VII and VIII,
Ayotte incorporates his prior allegations and asserts that defendants conspired in
violation of 42 U.S.C. § 1985. In Count IX, Ayotte incorporates his prior
allegations and asserts that defendants' conspiracy violated his rights under the
First, Fifth, Sixth and Fourteenth Amendments by depriving him of his legal
materials. Ayotte sues all defendants in their individual and official capacities
for unspecified monetary damages.

## III.   ANALYSIS AND CONCLUSION

### A.   Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to
interrogatories and admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S.574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

5

However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the nonmoving party. *Anderson*, 477 U.S. at 248, 251.

        B.      <u>Exhaustion of Administrative Remedies</u>

        1.      Legal Standards

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms

of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Brown v. Toombs*, 139 F.3d 1102 (6th Cir.), *cert. denied*, 525 U.S. 833 (1998) (No federal action shall be brought until such administrative remedies as are available are exhausted). In other words, a prisoner may not exhaust administrative remedies during the pendency of the federal lawsuit. *Larkins v. Wilkinson*, 1998 WL 898870, at *2 (6th Cir. Dec. 7, 1998).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id.* Accordingly, exhaustion is satisfied if plaintiff complied with the applicable grievance procedures and defendants bear the burden of showing otherwise. *See Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (a prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

Here, defendants have moved for summary judgment on the issue of whether plaintiff failed to exhaust his administrative remedies under the PLRA. However, as previously stated by a court in this district, summary judgment seems an inappropriate vehicle for adjudication because there is no determination on the

7

merits of the case, and no "judgment" is entered.  *See Neal v. Raddatz*, 2012 WL

488827, at *2 (E.D. Mich. Jan. 12, 2012).  Instead, a number of courts have

characterized a request to dismiss for failure to exhaust administrative remedies as

"subject to an unenumerated Rule 12(b) motion rather than a motion for summary

judgment."  *Id.* (quoting *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003);

*see also  Johnson v. Gregoire*, 2008 WL 5156428, *3 (W.D. Wash. 2008), citing

*Ritza v. International Longshoremen's and Warehousemen's Union*, 837 F.2d 365,

369 (9th Cir. 1988) ("finding that while no defense described in 12(b)(1) through

(7) encompasses failure to exhaust, federal courts traditionally have entertained

certain pre-answer motions not expressly provided for by rule, and authority to

hear such motions lies in federal court's inherent power to regulate actions

pending before it"); *Thrasher v. Garland L*, 2007 WL 3012615, *1-2 (W.D. Wash.

2007) ("The proper motion to bring when asserting failure to exhaust

administrative remedies . . . is an unenumerated 12(b) motion. . . .").  Based on the

above, the *Raddatz* court determined that regardless of whether the motion is

treated as one for summary judgment or as an unenumerated 12(b) motion, the

result is the same.  *Id*. at 3.  If the court grants the motion, the dismissal will be

without prejudice and it will not count as a strike under 28 U.S.C. § 1915(g).  *Id*.

The court concluded, however, that the latter approach, adjudicating the motion as

an unenumerated motion under 12(b) was more consistent with the "true nature of

8

the motion."[3] *Id.*

>   2.    Exhaustion of false misconduct ticket claims

According to defendants, Ayotte has not properly exhausted his complaint allegations as to any defendant because he did not properly complete the grievance process regarding those issues.  Ayotte filed one Step III grievance appeal while incarcerated at MRF.  (Dkt. 20, Ex. B).  In Grievance MRF-15-03-0455-02, Ayotte complained that he was wrongfully removed from his food service position and owed back pay.  *Id.*  Nowhere in this Step I grievance does Ayotte name Deputy Warden Steward, Hearings Investigator Bridges, Lieutenant Neuberger, Sergeant Hughes or C/O Stemen despite the requirement that the names of all those involved in the issue being grieved are to be included.  (Dkt. 20, Ex. A at ¶ R).  In response, plaintiff points out that misconduct tickets are not grievable under the MDOC grievance procedure.

Plaintiff is correct as to the retaliation claim based on the misconduct ticket. Decisions made in the prison hearings division are non-grievable.  *Bergey v. Tribley*, 2015 WL 7731426, *3 n.1 (W.D. Mich. 2015), *adopted* 2015 WL 7738093 (citing Policy Directive 03.02.130, ¶ F(1)).  Instead, plaintiff "shall file a motion or application for rehearing in order to exhaust his or her administrative

---

[3]  The court also noted that there was no reason that the motion could not simply be designated as a "motion to dismiss pursuant to 28 U.S.C. § 1997e(a)."

remedies before seeking judicial review of the final decision or order." *Id.*, citing Mich. Comp. Laws § 791.255(1). The rehearing request must be made within thirty days after the final decision or order is issued. *Id.*, citing Mich. Comp. Laws § 791.254(3). *Siggers v. Campbell* established that a prisoner must argue that his receipt of a misconduct ticket was based on conspiracy or retaliation during the first misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-694 (6th Cir. 2011). Otherwise, the prisoner is precluded from using such a claim as a basis to request a rehearing. *Id.* at 693-94.[4] Here, defendants do not argue and offer no evidence as to whether plaintiff raised the retaliation issue during the misconduct hearing process. Notably, only part of the misconduct hearing documents appear to be part of the record. While defendants proffer the ticket report and the hearing report, plaintiff claims that the ticket was overturned on appeal. No documents relating to that process appear to be part of this record. Thus, the undersigned concludes that defendants have not established, as is their burden on the

_____

[4] Other, unpublished decisions appear to be contrary. *See e.g.*, *Ragland v. City of St. Louis*, 2012 WL 511827, *4 (E.D. Mich. 2012) ("[W]hile it is true that Plaintiff cannot grieve the decision of an administrative hearing officer, his Complaint allegation is that the underlying misconduct charge—not the hearing officer's decision—was retaliatory. Plaintiff could have and was, therefore, required to grieve the alleged retaliatory misconduct charge.") (footnote omitted), citing *Boyd v. Ray*, 19 Fed.Appx. 209, 2001 WL 1042261 (6th Cir. 2001) (where the plaintiff's claim did not involve the administrative hearing officer's decision but rather an allegation that the underlying misconduct charge was false, he was required to exhaust his administrative remedies). However, most recently the Sixth Circuit affirmed a decision where this Court determined that a prisoner failed to exhaust a retaliation claim by failing to raise the issue during the misconduct ticket hearing process. *Carr v. Booker*, 2014 WL 409026 (E.D. Mich. Feb. 3, 2014), affirmed *Carr v. Booker*, Case No. 14-1258 (6th Cir. Dec. 4, 2014).

10

affirmative defense of exhaustion, that plaintiff failed to exhaust his administrative remedies on this claim and the motion for summary judgment on this basis should be denied, without prejudice.

### 3.      Exhaustion of Remaining Claims

Pursuant to MDOC policy directive 03.02.130 entitled "Prisoner/Parolee Grievances," there are four stages to the grievance process that must be followed before a prisoner can seek judicial intervention, each with specific time limits. First, the prisoner must attempt to verbally resolve the issue with the staff member(s) involved within two business days of becoming aware of a grievable issue. If the issue is not resolved, the prisoner may file a Step I grievance within five business days of the attempted verbal resolution. If the prisoner is not satisfied with the Step I outcome, or he does not receive a timely response, he must request a Step II appeal form within five days, and he then has an additional five days to file the Step II appeal. If the inmate is still not satisfied with the result, he must then file a Step III appeal within 10 business days. The Step III response ends the administrative process. (Dkt. 20-2).

When filing a grievance and/or grievance appeal, an inmate must state the facts involved with the issue being grieved, and must also include the "[d]ates, times, places, and names of all those involved in the issue being grieved." (Dkt. 20-2). A grievance may be rejected if it is vague, illegible, contains multiple

11

unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant.  A grievance may also be rejected if the grievance is untimely.  *Id.*

As set forth above, Ayotte has filed one Step III grievance appeal while incarcerated at MRF.  (Dkt. 20, Ex. B).  Plaintiff does not dispute that this is the only fully exhausted grievance during his time at MRF.  He claims, however, that the appeal of the misconduct ticket somehow exhausts all of the claims in the complaint.  The undersigned disagrees.  In Grievance MRF-15-03-0455-02, Ayotte complained that he was wrongfully removed from his food service position and owed back pay.  *Id.*  Defendants points out that nowhere in this Step I grievance does Ayotte name Deputy Warden Steward, Hearings Investigator Bridges, Lieutenant Neuberger, Sergeant Hughes or C/O Stemen despite the requirement that the names of all those involved in the issue being grieved were to be included.  (Dkt. 20, Ex. A at ¶ R).  Nor can it be said that the Step I grievance otherwise placed the unnamed defendants on notice that their conduct was being challenged.  In his Step I grievance, plaintiff says that he is owed back pay for his wrongful termination from his food service assignment and was denied due process on the misconduct ticket.   In the view of the undersigned, it is not necessary to decide plaintiff's due process claims here, as those are addressed substantively below.

However, the remainder of plaintiff's claims were not exhausted with his single grievance regarding his misconduct ticket and the loss of his prison job. The undersigned recognizes that plaintiff is not required to allege in his grievance a specific legal theory or facts that correspond to all the required elements of a legal theory. Rather, "it is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) (finding that this relaxed standard is consistent with the general practice of liberally construing pro se prisoners' filings). Even under this relaxed standard, however, the undersigned concludes that plaintiff did not definitively exhaust any claims other than the due process claims discussed in detail below.

Here, plaintiff did not mention any conspiracy in his grievance, any violation of 42 U.S.C. § 1985, any retaliation unrelated to the misconduct ticket, any violation of the Equal Protection Clause, any violation of the Sixth Amendment, any claim based on a failure to disclose exculpatory evidence, or any claim relating to the destruction of legal materials or the confiscation of files. In addition, plaintiff only mentioned defendants Benson, Visconti, and Von Hiltmeyer in his grievance. He made no mention of any conduct by defendants Steward, Bridges, Neuberger, Hughes or Stemen. While a grievance is not a

13

summons and complaint, a review of the grievance, the appeals, and the responses do not suggest that prison officials were put on notice of any alleged wrongdoing by these defendants. *See Moffat v. MDOC*, 2010 WL 3906115, *7 (E.D. Mich. 2010) (citing *Jones v. Bock*, 549 U.S. 199 (2007), citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2006) ('We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.'). Rather, the leading purposes of the exhaustion requirement are met where prison officials were alerted to the plaintiff's complaints, they addressed all of plaintiff's allegations on their merits, and the litigation was improved by the preparation of useful record. *Id.* Here, plaintiff's grievance does not fulfill these purposes. Thus, the undersigned concludes that plaintiff's one grievance fails to exhaust any claims against defendants Steward, Bridges, Neuberger, Hughes or Stemen as well as any claims based on conspiracy, any violation of 42 U.S.C. § 1985, any retaliation claim unrelated to the misconduct ticket, any violation of the Sixth Amendment, any claim based on a failure to disclose exculpatory evidence, and any claim relating to the destruction of legal materials or the confiscation of files.

C.     Retaliation Based on Misconduct Ticket

The undersigned concludes that it is premature to decide the merits of

plaintiff's First Amendment retaliation claim because the Court is unable to decide

whether this claim was exhausted, given the incomplete record before it.

Whenever feasible, the Court should decide exhaustion disputes before addressing

the merits of the claims.  *See Mattox v. Edelman*, 2016 WL 398242, at *1 (E.D.

Mich. 2016), report and recommendation adopted sub nom. *Mattox v. Pandya*,

2016 WL 945340 (E.D. Mich. Mar. 2016) (citing *Albino v. Baca*, 747 F.3d 1162,

1170 (9th Cir. 2014).  In this case, the Court is unable to decide the exhaustion

issue with any finality because the parties have not fully developed the record as to

whether plaintiff actually pursued to completion the available administrative

remedies for his retaliation claim during the misconduct ticket proceeding, which,

as discussed above, is the appropriate venue for plaintiff to so exhaust.  Thus, the

undersigned declines to make any recommendations on the merits of plaintiff's

First Amendment retaliation claim until the parties have had an opportunity to

more thoroughly develop the record regarding exhaustion of this claim.[5]  This

approach comports with the court's "usual reluctance to decide constitutional

---

[5] The undersigned suggests that defendant be permitted to bring a new dispositive motion based on exhaustion of administrative remedies with evidence to supplement the current record if it exists. If the court determines that plaintiff's First Amendment retaliation claim has been exhausted, then the court should move forward with deciding the merits of plaintiff's retaliation claim.

questions unnecessarily." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *see also Reno v. Flores*, 507 U.S. 292, 300 (1993) (Court proceeded to decide statutory issue on appeal, which had not been decided below in order to avoid deciding constitutional question unnecessarily.).

   D.   Fourteenth Amendment Due Process

   Plaintiff separately argues that his actions in seeking redress on his own behalf and on behalf of others through the Warden's Forum are constitutional rights under the Fourteenth Amendment.  Plaintiff seems to be arguing that the issuance of a false misconduct ticket against him is a violation of his due process rights.  The Fourteenth Amendment due process clause includes a right to procedural due process as well as substantive due process.  *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 762 (6th Cir. 2005).  The "right to procedural due process ... generally focuses on whether there existed adequate notice and an opportunity for the affected parties to be heard." *Marderosian v. City of Beavercreek*, 423 Fed. Appx. 524, 527 (6th Cir. 2011).  A substantive due process claim must be based on a showing of a constitutionally protected property or liberty interest and the deprivation of such an interest "through arbitrary and capricious action." *Bertovich v. Village of Valley View, Ohio*, 431 Fed. Appx. 455, 459-60 (6th Cir. 2011).

   Plaintiff's claim is similar to the one rejected in *Courtney v. Michigan Dep't*

16

*of Corr.*, 2015 WL 4644811, at *5 (W.D. Mich. 2015), where the plaintiff asserted that his due process rights were violated by virtue of a false misconduct ticket written by the defendants, and by his removal from the Warden's Forum. As observed by the court in *Courtney*, due process of law gives the person the opportunity to convince an unbiased decision-maker that he has been wrongly or falsely accused or that the evidence against him is false. Yet, the Due Process Clause does not guarantee that the procedure will produce a correct decision. *Id*. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

As in *Courtney*, plaintiff here clearly received procedural due process of law and does not appear to claim otherwise. There is no dispute that plaintiff was given a hearing and an appeal regarding his misconduct ticket, and plaintiff even indicates that the ticket was ultimately overturned. *See* n.2. The *Courtney* court concluded that where – as here – the plaintiff states that he was found not guilty of

17

the misconduct ticket, his due process claim was properly dismissed.  Likewise,

plaintiff admits to having engaged in a procedural process which ultimately led to

the dismissal of his misconduct ticket.  Therefore, any procedural due process

claim, as it relates to the misconduct ticket, is without merit.

 Plaintiff has also failed to set forth a claim for substantive due process

inasmuch as he has not articulated a constitutionally protected property or liberty

interest here.  Rather, plaintiff's claim is also similar to the one rejected in

*Courtney* , 2015 WL 4644811, at \*5.  The *Courtney* court determined that removal

from the Warden's Forum does not constitute an atypical or significant hardship as

required in *Sandin v. Conner*, 515 U.S. 472, 486-87 (1995) (A prisoner is entitled

to the protections of due process only when the sanction "will inevitably affect the

duration of his sentence" or when a deprivation imposes an "atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison

life.").  Likewise, the undersigned concludes that plaintiff's loss of privileges for

four days is not an atypical or significant hardship.  The temporary loss of

privileges does not constitute a loss of a liberty interest in which prisoners have

vested rights.  *Peterson v. Holland*, 2016 WL 3360492, at \*3 (E.D. Ky. 2016),

citing *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996) (denial of access to

privileges such as social and rehabilitative activities did not constitute an atypical

and significant hardship); *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)

18

(loss of commissary, recreation, package, and telephone privileges were not an atypical and significant hardship); *Tate v. Williams*, 2007 WL 120109 (S.D. Ohio 2007), *adopted and affirmed*, 2007 WL 781657 (S.D. Ohio 2007) (finding no constitutional violation where prisoner's privileges were temporarily suspended).

The undersigned agrees with defendants that the federal constitution also does not create a liberty or property interest in prison employment. *Dellis v. Corrections Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989). "Further, as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter v. Tucker*, 69 Fed.Appx 678, 680; 2003 WL 21518730 (6th Cir. July 1, 2003). Accordingly, plaintiff fails to state a due process claim arising from the termination of his prison job.

Finally, to the extent that plaintiff alleges any other due process violation relating to the misconduct hearing process, the Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See e.g.*, *Ingram v. Jewell*, 94 Fed.Appx. 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 Fed. Appx. 678, 680 (6th Cir. 2003); *Green v. Waldren*, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, 1999 WL 617967, at *2

19

(6th Cir. Aug. 12, 1999). No such loss is implicated here. Therefore, plaintiff's due process claims are entirely without merit.

### E.   Fifth Amendment

As defendants correctly point out, the restrictions in the Fifth Amendment apply only to the federal government. *Public Utils. Comm'n of Dist. of Col. v. Pollack*, 343 U.S. 451, 461 (1952); *see also Myers v. Prindle*, 2014 WL 3747385, *2 n. 2 (E.D. Ky. 2014) (The claims against state actors fall under the Fourteenth Amendment, rather than Fifth Amendment, which applies to federal actors.). Since all of the defendants are state actors, the Fifth Amendment does not apply to them and they are entitled to dismissal of all claims premised on the Fifth Amendment.

### F.   Eleventh Amendment Immunity

Plaintiff has asserted a § 1983 claim against the MDOC employees who were acting in their official capacities.   However, the Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This jurisdictional bar applies to claims for injunctive relief, as well as those for money damages. *See id.* at 100-101. The State of Michigan has neither waived its sovereign immunity nor consented to civil rights suits in federal court. *See*

*Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).  Nor does the language of § 1983 permit suits against a State or its agencies.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (neither a State nor its officials acting in their official capacities are "persons" under §1983).

Plaintiff does not specify whether his claims are against the named employees in their official capacities or individual capacities.  Yet, the facts which he alleges in his complaint relate solely to the employees' actions on behalf of the MDOC, which is irrefutably an arm of the State.  Given these facts, plaintiff's complaint against the MDOC and its employees in their official capacities fails to state a claim and should be dismissed.

G.    Qualified Immunity

Officials or employees of the Michigan Department of Corrections who are sued in their individual capacities "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996).  As set forth above, plaintiff has not established a violation of his Constitutional rights in relation to the single claim, Fourteenth Amendment Due Process, for which he satisfied the exhaustion requirement.  The Court has declined to consider

21

plaintiff's First Amendment retaliation claim pertaining to the misconduct ticket as premature given the under-developed record relating to whether plaintiff has properly exhausted that claim. As such, the issue of qualified immunity will only be relevant if it is later determined that plaintiff did, in fact, properly exhaust his retaliation claim. Therefore, no further consideration of the qualified immunity defense need be undertaken at this time.

## IV.   RECOMMENDATION

For the above stated reasons, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED** in part and **DENIED** in part, without prejudice. The practical impact of the ruling would be the dismissal of all claims with the exception of plaintiff's claims against defendants Visconti and Bridges for alleged retaliation under the First Amendment pending potential further consideration after a full development of the record relating to exhaustion of that claim.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

22

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 11, 2016                         s/Stephanie Dawkins Davis
                                              Stephanie Dawkins Davis
                                              United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on August 11, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Mail to the following non-ECF participant: <u>Paul Ayotte #183113, Ojibway Correctional Facility, N5705 Ojibway Road, Marenisco, MI 49947.</u>

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

24